UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

**PATRICK JAMES WERNER,**

                Plaintiff,

v.                                       **Case No. 15-cv-104-pp**

**EDWARD F. WALL,
KATHRYN ANDERSON,
KRIS CHILSEN,
JACKIE GUTHRIE,
GRACE ROBERTS, and
DEBBIE LARRABEE,**

                Defendants.

_____

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DKT. NO. 2), GRANTING PLAINTIFF'S MOTION TO WAIVE INITIAL PARTIAL FILING FEE (DKT. NO. 4), DENYING AS MOOT PLAINTIFF'S MOTION TO HAVE DEFENDANTS RECEIVE FILING THROUGH PACER (DKT. NO. 5), DENYING PLAINTIFF'S MOTION TO PUBLISH ALL DECISIONS (DKT. NO. 9), GRANTING PLAINTIFF'S REQUEST TO SCREEN COMPLAINT (DKT. NO. 12) AND SCREENING PLAINTIFF'S COMPLAINT**

_____

Patrick James Werner, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis*, the plaintiff's motion to waive the initial partial filing fee, the plaintiff's motion to have defendants receive filings through PACER and the plaintiff's motion to publish all decisions, as well as screening the plaintiff's complaint.

**I.**     **MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That

1

law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 28, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $10.16. Dkt. No. 7. Previously, however, the plaintiff had filed a motion to waive the initial partial filing fee. Dkt. No. 4. In that motion, the plaintiff detailed both his earnings and the many deductions that the prison takes from this prison trust account, leaving him without a remainder to pay his initial partial filing fee. "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has not assets and no means by which to pay the initial partial filing fee." 28 U.S.C. §1915(b)(4). The court will grant the plaintiff's motion to waive the initial partial filing fee, Dkt. No. 4, and will grant the plaintiff's motion for leave to proceed without pre-paying the filing fee, Dkt. No. 7. The court will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II. SCREENING OF THE PLAINTIFF'S COMPLAINT

### A. Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a

2

governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992), quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989). See also Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim,

3

a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. <u>Facts Alleged in the Complaint</u>

The complaint states that on August 23, 1999, the plaintiff was sentenced to serve ten years in custody (consecutive to a prior sentence of two years in a different case) for second-degree sexual assault of a child. Dkt. No. 1 at 4. On that same date, he was sentenced to a ten-year term of probation (to be served consecutively to the ten-year custodial sentence) after his conviction for child enticement-sexual contact. <u>Id.</u> The plaintiff indicates that he finished serving his term of incarceration on November 16, 2012, at which time he began serving the ten-year term of probation. He indicates that, while his probation was revoked, it was revoked for rule violations, not the commission of new offenses. <u>Id.</u>

The complaint indicates that in 2006, the Wisconsin Assembly enacted Wis. Stat. §301.48, the Wisconsin statute that mandates lifetime GPS (Global Positioning System) monitoring of sex offenders. <u>Id.</u> The plaintiff submits that he was first "forced to comply" with the provisions of §301.48 in March 2008, but that the GPS tracking equipment didn't work and he was "forced to be placed in the County Jail due to faulty equipment." <u>Id.</u> at 5. In 2011, the plaintiff received from a Department of Corrections employee named Erin Murto information about the GPS tracking fee imposed by the statute, along with a letter indicating to the plaintiff that he was going to be enrolled in the GPS tracking program. <u>Id.</u> at 4. In 2012, he received a letter from defendant Debbie Larrabee, explaining to him why he was subject to the statute, and informing him that a bracelet would be placed on his ankle and a home-based

5

unit placed in his residence. Id. Although the plaintiff currently is incarcerated, he alleges that he has a discharge date of February 15, 2023, and he will be subject to the statute again at that time. Id. at 9. He argues that by the time he is discharged, he will have been subject to the requirements of the statute for almost fifteen years, but that under Wis. Stat. §301.48(6)(b)(2), he still won't be able to petition for termination of the lifetime tracking requirement for another five years. Id.

The plaintiff's twenty-one page, comprehensive complaint includes background on the legislative history of §301.48. It also references commentary on and critique of the GPS program that has been issued by outside entities and news agencies.

From a legal standpoint, the plaintiff argues in the complaint that subjecting him to a punishment (which is how he characterizes the lifetime GPS monitoring) which the legislature created after his crime was committed violates the Ex Post Facto Clause of Section 1 of the Fourteenth Amendment. Id. at 16. He argues that lifetime GPS tracking is a punitive measure, which infringes on his personal liberty. Id. He also suggests that the monthly tracking fee constitutes a possible Equal Protection violation, because it does not apply to sexually violent offenders who are committed to the custody of the department of health services under the procedures prescribed in Wis. Stat. §980.01 et seq. Id. at 20.

The plaintiff seeks declaratory relief, compensatory and punitive damages, and costs. Id. at 21. He also implies that he wants this case to be a

6

class action (though he has not filed a class certification motion under Fed. R. Civ. P. 23). Id.

### C. Legal Analysis of Alleged Facts

The plaintiff argues that requiring a person to wear a GPS tracking device—and to pay for it—for the rest of the person's life is an infringement on one's personal liberty. The Due Process Clause of the Fourteenth Amendment provides that the government shall not "deprive any person of life, liberty, or property, without due process of law." "Freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.'" Kansas v. Hendricks, 521 U.S. 346, 356 (1997) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). If Wis. Stat. §301.48 constitutes a deprivation of, or restraint on, liberty—and it is arguable that it does—then the State of Wisconsin was required to provide the plaintiff with due process before subjecting him to that deprivation or restriction. The plaintiff alleges that he received no due process; the law was enacted long after his crimes, conviction and sentencing. He alleges that he simply was told, years after his conviction and sentencing, that he was subject to the statute. Based on these allegations, the court concludes that the complaint states sufficient facts to allow the plaintiff to proceed on a due process claim.

The plaintiff also argues that a requirement that a defendant wear a GPS monitor for life, and pay for it, constitutes punishment. He asserts facts supporting his contention that the law that created that punishment was passed years after his conviction and sentence. Article I, §10, cl. 1 of the

7

Constitution prohibits states from passing any "ex post facto Law." The Supreme Court has held that the constitutional prohibition on ex post facto laws prohibits the passing of laws that "*change[] the punishment*, and inflict[] a *greater punishment*, than the law annexed to the crime, when committed." Collins v. Youngblood, 497 U.S. 37, 41 (emphasis in the original) (quoting Calder v. Bull, 3 Dall. 386, 390 (1798)).

> No doubt, the State views lifetime tracking not as punishment, but as a measure intended for the protection of the public. Yet, even enactments that are intended solely for the protection of the public will be found punitive and a violation of rights protected by the Constitution if 'the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil.'

Belleau v. Greene, No. 12-C-1198, 2013 WL 1975672 (E.D. Wis. May 13, 2013) (quoting Smith, 538 U.S. at 92). The plaintiff argues that §301.48 constitutes such a statutory scheme—that subjecting him to lifetime GPS tracking for which he must pay is so punitive that the court should deem it punishment, and not a civil protective measure. Like the court in Belleau, this court cannot determine, at this stage, whether the lifetime GPS tracking system under Wis. Stat. §301.48 is punitive to that degree. There is a reasonable argument to be made, however, that the statute does constitute punishment, and that because the plaintiff was subjected to that increased punishment after his conviction and sentencing, he has a claim under the Ex Post Facto Clause. The court will allow him to proceed on that claim.

In contrast, however, the court finds that the complaint does not state sufficient facts to allow the plaintiff to proceed on an equal protection claim.

8

> To establish a prima facie case of discrimination under the equal protection clause, [the plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class.

Brown v. Budz, 398 F.3d 904, 916 (7th Cir. 2005). The plaintiff implies that he is a member of a class—convicted sex offenders who are not committed as violent sex offenders under Wis. Stat. §980.01 et seq. His argument assumes that this class is protected, that he is similarly situated to members of an unprotected class (presumably, a class made up of violent sex offenders committed under Chapter 980), and that the lifetime tracking statute treats him differently than the members of the unprotected class for no reason. Uncommitted sex offenders, however, do not constitute a protected class under the Equal Protection Clause. Over the years, the Supreme Court has found that race, national origin, religion, gender and age may place someone in a protected class; it never has determined that uncommitted sex offenders constitute a protected class. The court will not allow the plaintiff to proceed on his equal protection claim.

Now that the court has decided the claims upon which the plaintiff may proceed, the next step is to determine the proper defendant or defendants against whom the plaintiff may assert his due process and ex post facto claims, and whether the plaintiff may proceed against them in their individual or official capacities.

9

The distinction between official capacity and individual capacity is significant. "Personal-capacity suits seek to impose liability upon a government official for actions he takes under color of state law. . . . Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Hill v. Shelander, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting Kentucky v. Graham, 473 U.S.159, 166 (1985)). In other words, a personal-capacity suit is appropriate when an official, acting under the color of state law, personally deprives a plaintiff of a federal right. Id. An official-capacity suit is appropriate when a person is only executing or implementing the official policy or custom of a government entity. Id.

Although the plaintiff named as defendants six individuals holding various positions with the DOC, the complaint mentions by name only three. The plaintiff asserts that defendant Debbie Larrabee, the GPS Specialist at the DOC, sent him a letter on October 24, 2012, explaining why lifetime GPS monitoring applied to him. Dkt. No. 1 at 4. He alleges, then, that defendant Larrabee personally was involved in depriving him of due process, and in subjecting him to ex post facto punishment. In making this allegation, he also alleges that Larrabee was the instrument through which the State of Wisconsin executed an unconstitutional statute. The court concludes that the plaintiff may proceed against Larrabee both on individual and official capacity claims.

The complaint mentions that defendant Grace Roberts sent a letter to DOC staff regarding specific provisions of the lifetime monitoring statute, id. at 4-5 and 7, and that defendant Jackie Guthrie made statements (to whom is not

10

clear) regarding what the Department of Corrections had or had not done regarding the program, id. at 6. The complaint contains no facts which indicate that either of these defendants were involved with the plaintiff directly. Accordingly, the court finds that the plaintiff has not stated claims against these defendants in their individual capacities. The complaint does not mention defendants Edward F. Wall, Kathryn Anderson or Kris Chilsen at all, other than to list them in the "Defendants" section at the beginning of the complaint. Because none of these defendants dealt directly with the plaintiff in regard to the GPS monitoring statute, the court dismisses them as individual defendants. Because the court already has determined that the plaintiff may proceed on an official capacity claim against defendant Larrabee, these other defendants are not necessary to any official capacity claim. The court will dismiss all of these defendants.

The court notes that the plaintiff's official capacity claim is for declaratory and injunctive relief only. "To the extent that [the plaintiff] seeks monetary damages from defendants acting in their official capacity, those claims for retroactive relief are dismissed as they are barred by the Eleventh Amendment." Brown, 398 F.3d at 918. Larrabee remains subject to the plaintiff's claims for monetary damages in her individual capacity. See id.

### III. PLAINTIFF'S OTHER MOTIONS

The plaintiff has filed two other motions. He asks to have the defendants receive filings through PACER. Dkt. No. 5. Because all of the court's screening orders state that the defendants will receive electronic notice of documents

11

plaintiffs file with the court, this motion is unnecessary, and the court will deny it as moot.

The plaintiff also asks the court to publish all decisions. Dkt. No. 9. He bases this request on his characterization of this case as a class action (although, again, he has not filed a Rule 23 class certification motion, and this court has not certified a class). He suggests there is a large group of individuals who would be impacted by the court's decision in this case, and argues that published decisions would make it easier to communicate information and to recruit additional plaintiffs.

First, the court does not have final control over which decisions are published and which are not. Publication services, such as Thompson West, search court databases, and often publish cases even when the court has not designated the decision or order as publishable. Second, a court does not base its decision regarding whether to publish on the desires of an individual plaintiff. Every judge decides, for him or herself, whether a particular decision contributes to the jurisprudence in a particular area, such that its publication might be relevant to the public. The court will treat this case no differently. If and when it issues a decision in this case, it will decide whether to publish that decision in the same way that it decides that question in all other cases. The court will deny this motion.

Finally, the plaintiff filed a request that the court screen his (several) cases. Dkt. No. 12. The court grants that request to the extent that it issues this screening order.

## IV. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis*. Dkt. No. 2. The court also **GRANTS** the plaintiff's motion to waive the initial partial filing fee. Dkt. No. 4. The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $350.00 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this action.

The court **DENIES AS MOOT** the plaintiff's motion to have defendants receive filings through PACER. Dkt. No. 5. The court **DENIES** the plaintiff's motion to publish all decisions. Dkt. No. 9. The court **GRANTS** the plaintiff's request to have the court screen his case. Dkt. No. 12.

The court **DISMISSES** the following defendants: Edward F. Wall, Kathryn Anderson, Kris Chilsen, Jackie Guthrie, and Grace Roberts.

The court **ORDERS** that the plaintiff may proceed on individual and official capacity claims against Debbie Larrabee.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of

13

plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on state defendant Debbie Larrabee.

The court also **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendant Larrabee shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 18th day of September, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge